```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
SM KIDS, LLC,                                                :
                                   Plaintiff,                :
                                                             :        18 Civ. 2637 (LGS)
                 -against-                                   :
                                                             :        OPINION AND ORDER
GOOGLE LLC, et al.,                                          :
                                   Defendants.               :
------------------------------------------------------------ X
```

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: 7/16/2019

LORNA G. SCHOFIELD, District Judge:

Plaintiff SM Kids, LLC, brings this action against Defendants Google, Alphabet and XXVI Holdings, Inc., seeking to enforce the terms of a 2008 settlement agreement (the "Settlement Agreement"). Defendants move to dismiss for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons stated below, Defendants' motion is granted.

I. **BACKGROUND**

Steven Silvers created the Googles brand in 1995. In 1997, Silvers registered the Googles trademark and the Internet domain www.googles.com, which launched in 1998 as a child-friendly education and entertainment website. In 1998, Google, the internet-based search engine, adopted the Google mark. Silvers sued Google for trademark infringement in 2005. On February 17, 2007, Silvers assigned all the rights and interests in Googles to Stelor Productions LLC ("Stelor"). On December 15, 2008, Google and Stelor settled the trademark infringement litigation.

In 2006, Stephen Garchik invested in Stelor. In 2007, Garchik became a director of Stelor and served as Chief Financial Officer for approximately six months. At that time, the Googles website was an interactive website, where children could become a "Goo Kid" member, play "Goo Games," receive "Goo Points" and listen to "Goo Music."

In 2007, Garchik formed Stelpro Loan Investors, LLC and Stelpro Loan Investors II, LLC (collectively, the "Stelpro Investors") "for the primary purpose of lending Stelor the funds to realize its business plans," including purchasing the googles.com domain name from Silvers. Stelpro Investors consisted of "five to six" investors, in addition to Garchik. During the summer and fall of 2007, Stelpro Investors provided Stelor a series of loans totaling $2,917,680.56. Stelor defaulted on the loans in 2008. Garchik subsequently resigned from Stelor's Board of Directors and filed an action in Maryland state court to recover the debt from Stelor. On September 1, 2009, the Maryland court granted summary judgment in favor of the investors and directed Stelor to transfer to Garchik all of Stelor's business assets, including any intellectual property and the domain name googles.com.

On October 7, 2009, Stelor filed a petition for bankruptcy, which automatically stayed execution of the Maryland court judgment. After the stay in the bankruptcy proceeding was lifted in 2011, Stelor assigned the "entire interest and the goodwill" of the Googles trademark to Garchik "DBA Stelpro Loan Investors, LLC." On January 1, 2013, Garchik transferred the Googles assets to SJM Partners, a company that Garchik founded in 1997 and of which he is the sole owner. On February 1, 2018, Garchik transferred the Googles assets to a newly-formed entity, SM Kids.

The Googles website remained essentially the same from the time of the assignment from Stelor to Garchik in 2011 until March 2014, when Garchik replaced the content with a "coming soon" page. On October 27, 2015, after partnering with a media consultant, Garchik added a video library "promoting [] Googles content" and eight songs of "Goosicals" music to the website. In 2016, Garchik partnered with media experts to revitalize the Googles website "as a platform featuring original, live-action, short form educational content for children aged eight to

twelve." Since late 2016 -- including in 2018 when the mark was assigned to Plaintiff -- the Googles site has consisted of a landing page that states "enjoy this sneak peak" or "coming soon" accompanied by video content.

## II.   STANDARD

"[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal citations omitted). To establish the first standing element, injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

"A Rule 12(b)(1) motion challenging subject matter jurisdiction [for lack of Article III standing] may be either facial or fact-based." *Carter v. HealthPort Techs.', LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "A defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Id.* at 57. "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant." *Id.* at 57. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016).

By orders dated March 24, 2018, and May 31, 2018, the Court permitted limited discovery as to the issue of standing and subject matter jurisdiction, specifically on the validity of the assignment of the Googles mark. The factual findings and legal conclusions in this

opinion are based on the evidence -- in the form of documents, deposition testimony and affidavits the parties submitted in connection with this motion -- rather than the allegations in the Complaint.  *See Carter*, 822 F.3d at 57.

### III. DISCUSSION

The Lanham Act governs assignments of registered trademarks.  At least two requirements must be met for an assignment to be valid under the Lanham Act: (1) the assignment must be "in writing duly executed," and (2) the assignment must "transfer an ownership interest in the marks at issue."  *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 73 (2d Cir. 2013); *see* 15 U.S.C. § 1060.  "[A] party is not an 'assign' for standing purposes under the Lanham Act unless that party owns the mark at issue."  *Fed. Treasury Enter. Sojuzplodoimport*, 726 F3d at 75.

Defendants seek to dismiss on the basis that Plaintiff lacks standing to enforce the Settlement Agreement because Plaintiff purportedly does not own the Googles mark, and rights under the Settlement Agreement belong only to the owner of the Googles mark.  Defendants' motion is granted; Plaintiff has not shown by a preponderance of the evidence that goodwill accompanied the assignment of the mark, which is necessary for an effective transfer.

A valid assignment of a mark must include the transfer of the goodwill of the business associated with the mark.  Under the Lanham Act, "[a] registered mark . . .  shall be assignable with the goodwill of the business in which the mark is used, or with that part of the goodwill of the business connected with the use of and symbolized by the mark."  15 U.S.C. § 1060(a)(1).  The rationale behind this statutory provision is that "[a] trademark is a mere symbol of the goodwill of the business with which it is associated."  *Berni v. Int'l Gourmet Rests.' of Am., Inc.*, 838 F.2d 642, 646 (2d Cir. 1988); *see also Prince of Peace Enters.', Inc. v. Top Quality Food*

*Mkt., LLC*, 760 F. Supp. 2d 384, 391 (S.D.N.Y. 2011). "Use of the mark by the assignee in connection with a different goodwill and different product would result in a fraud on the purchasing public who reasonably assume that the mark signifies the same thing." *Marshak v. Green*, 746 F.2d 927, 929 (2d Cir.1984); *accord Sik Gaek, Inc. v. Yogi's II, Inc.*, No. 10 Civ. 4077, 2013 WL 2408606, at *2 (E.D.N.Y. June 3, 2013). Accordingly, "the transfer of a trademark . . . without the attendant goodwill of the business which it represents is, in general, an invalid, 'in gross' transfer of rights." *Berni*, 838 F.2d at 646.

The existence and transfer of goodwill requires "use in commerce." 15 U.S.C. § 1127. "A fundamental principle of trademark law is that trademark rights arise solely from use of a mark in commerce to represent the goodwill of an on going business." *Jim Henson Prods., Inc. v. John T. Brady & Assocs., Inc.*, 867 F. Supp. 175, 182 (S.D.N.Y. 1994); *see also Berni*, 838 F.2d at 646 ("The extent of any trademark right is defined by its actual use in the marketplace."); *Creative Arts by Calloway, LLC v. Brooks*, No. 09 Civ. 10488, 2012 WL 6732907, at *5 (S.D.N.Y. Dec. 27, 2012) (Goodwill is not independent of "an ongoing and existing business." (internal quotation marks omitted)). "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. "A mark is used in commerce when it is employed to identify goods or services sold to consumers in a given market." *Cross Commerce Media v. Collective, Inc.*, 841 F.3d 155, 167 (2d Cir. 2016) (internal quotation marks and ellipses omitted); *accord Am. Express Co. v. Goetz*, 515 F.3d 156, 161 (2d Cir. 2008) ("[T]here can be no trademark absent goods sold and no service mark without services rendered.").

Plaintiff has not shown by a preponderance of the evidence that the Googles mark was used in commerce -- resulting in goodwill -- from 2010 when the mark was first assigned until

2018 when it was assigned to Plaintiff.  In 2010, the Googles business was envisioned to be "an interactive children's Website (ages 3 to 10) that will generate subscriptions, monthly fees, and associated revenue streams such as affiliate marketing and Website real estate leasing."  That vision was to be realized in three phases -- first, to "[b]ring the company from its current dormant state to operational activity"; second, to bring the website to market in a "pilot roll-out" within two U.S cities; and third, to "roll out googles.com regionally across the United States."  Based on the evidence in the record, none of these steps occurred, and the Googles "business" remained in its "dormant state."

In 2010, Stelor's then-CEO Steven Esrig told the U.S. Tax Court that "[t]here has been no income" from its activities, explaining that "the company didn't go live until roughly November of 2008 and then was up for only about a month or two."  The website was unchanged from August 2008 to February 2011 (including during the Stelor bankruptcy).  Stelor or its lawyers represented to the bankruptcy court on several occasions that the website had not yet launched.

After Garchik was assigned the mark at the conclusion of the bankruptcy in 2011, he testified that he did nothing with the website or the mark for the two years he owned it in his individual capacity until 2013.  Plaintiff has proffered no evidence, other than Garchik's vague assertions, that the Googles business sold any products or services during this or any other period.

Neither is there evidence of use in commerce during the five-year period when SJM Partners held the mark between 2013 and 2018, or after Plaintiff acquired the mark in 2018. From March 2014 to January 2015, the website contained nothing but a "coming soon" landing page, which was replaced with a solicitation for joint venture partners, a video library of Googles

content, and a single live action video.  In March 2015, visitors to the site again saw only a "coming soon landing page."  Garchik testified that the Googles business contributed no net income to SJM Partners, and the only revenues identified on the ledger of SJM Partners for the Googles "business" were contributions from Garchik.  In February 2018, the Googles assets were transferred to Plaintiff.  In sum, Plaintiff failed to sustain its burden of proving that the transfer of the Googles mark included the transfer of "goodwill of the business in which the mark is used."[1]  15 U.S.C. § 1060(a)(1).

That Garchik intended to produce new content for the existing website and was working with consultants in anticipation of launching fresh material is not use in commerce.  Preliminary steps to prepare to use a trademark do not constitute use in commerce.  *See Couture v. Playdom, Inc.*, 778 F.3d 1379, 1381–82 (Fed. Cir. 2015); *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1361 (Fed. Cir. 2009) ("[S]poradic steps in preparing to offer . . . service to the public," including creating a corporate entity, obtaining toll-free numbers, and contracting with taxi operators, did not constitute use in commerce where service itself was never sold); 2 McCarthy

---

[1] To the extent that Plaintiff or its predecessors sold any Googles branded products or apparel, such sales are de minimis.  Garchik testified that during the five-year period when SJM Partners owned the Goolges mark, he recalled revenue of between $100 and $500 based on unspecified sales from "t-shirts, hats . . . and books."  Since 2017, Garchik could not recall whether he made any profit from the sale of Googles t-shirts through a link to his wife's unaffiliated website Peace Love Solve.  Even if branded Googles apparel were sold through Garchik's wife's website, Garchik testified that the revenue would have been recorded as revenue for Peace Love Solve, and he could not recall whether any money was remitted to SJM Partners from the sale of those items.  Such sales are insufficient to be "use in commerce," and Plaintiff does not rely on them as such in support of their motion.  *See LaSociete Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1272 (2d Cir.1974) (89 sales in 20 years was not "the kind of bona fide use intended to afford a basis for trademark protection."); *Momentum Luggage & Leisure Bags v. Jansport, Inc.*, No. 00 Civ. 7909, 2001 WL 830667, at *6 n.16 (S.D.N.Y. July 23, 2001), *aff'd*, 45 F. App'x 42 (2d Cir. 2002) ($3,000 in gross revenue over two year period was not "bona fide use.").

on Trademarks and Unfair Competition § 16:12 (5th ed. 2018) ("If a business has not yet been established, there can be no good will and nothing yet created for the 'mark' to represent or symbolize. Selection of a mark with only an intention to do business in the future does not establish 'trademark' use of that symbol sufficient for priority over another.").

Plaintiff's reliance on *Cross Commerce Media Inc. v. Collective, Inc.*, 841 F.3d 155, is inapposite. In that case, the counterclaimant, Collective, Inc. ("CI"), was in the business of providing certain software to businesses. *Id*. at 159. CI claimed that a competitor had infringed its unregistered mark "collective." *Id*. at 160. The court held that the company's use of the domain name www.collective.com, and the term "Collective" to refer to itself on the website, provided colorable evidence that the company used the mark in commerce, precluding summary judgment against CI on its infringement claim. *Id.* at 167. Notably, CI was in the business of selling software products and used the website to describe its products and distinguish them from those of its competitors. *Id*. In *Cross Commerce* the website served as a vehicle to promote CI's products. Here, in contrast, the Googles website was itself the intended product, but the actual content was a placeholder, and plans were never realized to launch a multimedia children's entertainment platform to generate subscription and other revenue. Plaintiff has not sustained its burden of showing that the mark was used on the website "in the ordinary course of trade, and not made merely to reserve a right in a mark." *See* 15 U.S.C. § 1127.

Plaintiff's reliance on *Marvel Comics Ltd. v. Defiant, a Div. of Enlightened Entm't Ltd.*, 837 F. Supp. 546, 549 (S.D.N.Y. 1993), is similarly unpersuasive. In *Marvel*, the court found that plaintiff's pre-sale promotional activities for a new comic book series constituted commercial use that conferred trademark rights, even though the plaintiff had not yet started selling the comic books. *Id.* Those activities were promoting the new comic book trademark to

13,000,000 comic book readers and introducing the mark at "the most significant annual convention in the comic book business, attended by thousands of industry participants and readers" in anticipation of selling comic books. *Id.* (internal quotation marks omitted). Here there was no comparable "pre-sale" activity to promote any goods or services. As *Marvel* makes clear, in the absence of significant sales, a landing page at the website googles.com, without any other activity to promote, identify or distinguish the Googles mark to the consuming public is insufficient to constitute use in commerce. *See id.*; *Amped & Collection Inc. v. Hinton,* No. 18 Civ. 6094, 2018 WL 5283912, at *5 (S.D.N.Y. Sept. 10, 2018) ("Where substantial sales have not occurred, courts examine the level of pre-sale activity to determine whether a mark has been appropriated."); *Momentum Luggage & Leisure Bags*, 2001 WL 830667, at *6-7 (exhibiting products at trade show, advertisement in a magazine, mention in two trade show journals and $3,000 in sales over two years insufficient to show deliberate and continuous use of mark).

As the evidence is insufficient to show that the transfer of goodwill accompanied each purported assignment of the Googles mark, particularly the assignment of the mark to Plaintiff, that assignment is invalid. *See, e.g. Creative Arts by Calloway, L.L.C.*, 48 F. App'x at 18. Plaintiff does not have an ownership interest in the mark necessary to confer standing.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of Court is directed to close the open motion at Docket No. 62 and close the case.

Dated: July 16, 2019
      New York, New York

                                        LORNA G. SCHOFIELD
                                    UNITED STATES DISTRICT JUDGE