

Ian Shapiro
+1 212 479 6441
ishapiro@cooley.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/24/2020

Via CM/ECF

October 23, 2020

The Hon. Stewart D. Aaron
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

**Re: *SM Kids, LLC v. Google LLC, et al*. (18-cv-2637)**

Dear Judge Aaron:

Counsel for Plaintiff SM Kids, LLC ("SM Kids") and Defendants Google LLC, Alphabet Inc., and XXVI Holdings Inc. ("Google") write jointly pursuant to the Court's Orders (ECF No. 118, ¶4 and ECF No. 126), directing the Parties to file a Joint Letter setting forth each side's position on disputes concerning custodians, search terms, date ranges, and any other disputes.

## I. Date Ranges

### A. Date Ranges Applicable to the Collection of Documents in Google's Possession, Custody, or Control

#### 1. SM Kids' Position

The parties dispute the date range that should be searched. SM Kids has requested Google to apply a range of January 1, 2008, to February 26, 2018, except for SM Kids' Requests for Production of Documents (individually, an "RFP") 15 and 16, to which SM Kids has requested Google to apply a date range of January 1, 2005, to February 26, 2018. These RFP's request the following documents:

> 15. All Documents concerning the lawsuit Steven Silvers filed against Google in the United States District Court for the Southern District of Florida (Civil Action No. 05-80387).
>
> 16. All deposition transcripts from the lawsuit Steven Silvers filed against Google in the United States District Court for the Southern District of Florida (Civil Action No. 05-80387), including but not limited to the deposition transcript of Sergey Brin.

In that case (the "Silvers Litigation"), SM Kids' predecessor, the senior user of the "GOOGLES" mark, sued Google for trademark infringement. The Silvers Litigation resolved when the parties entered to the 2008 Settlement Agreement that is the subject of this action.

Nevertheless, Google has asserted that *nothing* related to the Silvers Litigation is relevant to the meaning of the Settlement Agreement except for the drafts of the Settlement Agreement itself. Google also refused to verify whether any such relevant documents even exist unless SM Kids - which (unlike Google) was not party to and has no access to the documents filed under seal in the Silvers Litigation - can prove otherwise.

The parties' understanding of the meaning of the Settlement Agreement at the time it was executed is a central issue in this action. SM Kids contends that documents relevant to the Silvers Litigation are necessarily instructive as to the meaning of the very document that resolved that matter. Most filings on the public docket of the Silvers Litigation were filed under seal and are thus unavailable to SM Kids (though are available to Google and presumably in their possession already). However, it is evident from what information is available publicly that the parties to the Silvers Litigation conducted a mediation on September 6, 2006. *See* Report of Mediation Conference, *Silvers v. Google, Inc.*, No. 9:05-cv-80387-KLR, ECF No. 122 (S.D. Fla. Sept. 13, 2006). It is highly likely that the 2006 mediation played a part in shaping the Settlement Agreement ultimately executed and documents and/or communications were created in connection with the 2006 mediation that would reflect the parties' understanding of the meaning of the terms ultimately documented in the Settlement Agreement. It is also highly likely that documents and deposition testimony will shed light on key terms included in the Settlement Agreement, if and to the extent those terms are ambiguous or, as is permitted under New York law, to supplement terms in the agreement but not to contradict them – including what Stelor's business was in 2008, what "develop," publish" and "create" meant in the context of the agreement, and what third party content Google was permitted to employ.

Google's position is based on its unproven assertion that the concepts and compromises contained in the Settlement Agreement first appeared with the creation of the initial draft of that document and not as a result of prior background discussions. On the contrary, resolving the Silvers Litigation took over two years from the time of the initial effort until it was finally settled. The mediation indicates that there are likely relevant documents prior to 2008. If Google wishes to represent that none exists, it should at minimum conduct a search to verify this.

### 2. Google's Position

Google intends to collect and review responsive documents from two different date ranges.

*First*, subject to Google's responses and objections to Plaintiff's Requests for Production Nos. 23, 24, and 29, Google will produce responsive documents in the following date range: February 23, 2013 - Present. In response to these requests, Google agreed to produce documents

sufficient to identify content: (i) created, designed, or published by Google that has a title of GOOGLE or a GOOGLE-formative title or mark, and (ii) which content was not or will not be sold, published, or distributed by third parties. Judge Schofield's Individual Rules do not require a party to search documents created more than five years before the filing of the lawsuit, absent agreement or good cause. Judge Schofield's Individual Rule II.A(b). Plaintiff filed this lawsuit on February 23, 2018, thus Google is not obligated to collect documents prior to February 23, 2013. Google does not agree to do so; nor has SM Kids identified good cause to do so.

*Second*, subject to Google's responses and objections to Plaintiff's remaining Requests for Production, Google will search for and collect documents in the following date range: January 1, 2008 through February 23, 2018. The parties to the Settlement Agreement at issue signed it on December 15 and 16, 2008. Though there were efforts to settle the dispute earlier than 2008, the documents reviewed thus far reflect that the parties only began negotiating the document that became the Settlement Agreement in the fall of 2008. For these reasons, Google agrees to search for documents as far back as January 1, 2008, but does not agree there is good cause to search for documents prior to this date.

## II. CUSTODIANS

### A. SM Kids' Custodians

#### 1. SM Kid's Position

SM Kids has identified Stephen Garchik and Tammy DePaolis as the custodians having documents responsive to Defendant's requests.

#### 1. Google's Position

Google requests that SM Kids disclose the third-party custodians from whom it intends to collect documents.

### B. Google's Custodians

#### 1. SM Kid's Position

During the parties' meet and confer sessions, SM Kids inquired whether Google intends to search the records of Tim Alger, Pavni Diwanji, Shimrit Ben-Yair, and Malik Ducard as custodians. Google responded that it is investigating whether these individuals possess relevant documents, but have not yet stated definitively whether these individuals will be treated as custodians.



All of these individuals are highly likely to have documents relevant to this dispute and have either been noticed or subpoenaed for depositions by SM Kids. Notably, Tim Alger signed the Settlement Agreement at the heart of this case. The remaining individuals are or were prominently and intimately involved with Google's children's entertainment offerings. Given that SM Kids has not moved to compel production of all of the various requests for production it made respecting Google's children's product offerings, to the limited extent that these custodians would have documents responsive to the remaining requests to which Google did not object and has agreed to produce documents, these custodians' record should be searched.

**1. Google's Position**

Google has identified six custodians as potentially having documents responsive to Plaintiff's requests. These individuals include: Adam Barea, Ruchi Bezoles, Andrew Abrams, Rose Hagan, Terri Chen, and Gina Paik. Google will continue to supplement this list if it identifies additional custodians.

## II. SEARCH TERMS

### A. SM Kids' Documents

**1. SM Kids' Position**

(i) SM Kids Has Resolved Discovery Questions

Google attempts to manufacture several "inconsistencies," discussed below. In actuality, counsel for SM Kids has conducted further due diligence into the questions raised in the October 14, 2020 conference and has clarified its position based on new information. First, counsel for SM Kids has confirmed that all the materials in the boxes containing Stelor documents – namely, *Googles from Goo* character bibles and scripts – were already collected and produced by SM Kids in 2018. There are no other documents in the boxes that have been withheld. The matter of the Stelor boxes was not raised in advance of the October 14, 2020 hearing; the fact that counsel did admitted to not having an answer at that time, on the record, is not probative of the actual answer, which we have now provided, about the Stelor boxes. Moreover, Google has noticed the deposition of Tammy DePaolis, who was the custodian of those records, and will be able to ask her any questions about the collection of documents from the boxes.

Second, while SM Kids' files do contain documents relating to Stelor and those documents have already been collected, counsel for SM Kids has confirmed that it does not possess a *separate* email or file server for Stelor. It frankly could not be more clear and less suspicious that Mr. Garchik and Ms. DePaolis, his long time administrative assistant, have used the same email domain for many years. Therefore, by searching their emails, ESI from the Stelor, SJM Partners, and SM Kids eras will be produced.

(ii) SM Kids' Technical Limitation to Non-Boolean Searches

Google has proposed numerous search terms that utilize search operators that isolate documents that contain certain words within a certain proximity of each other (*e.g.* "Steven /2 Silvers") (a "Proximity Operator"). SM Kids is unable to use such Proximity Operators in its first stage of document collection, and, therefore, has proposed alternative searches to accomplish the same results (e.g.," Steven Silvers," "Silvers, Steven," "Steve Silvers," "Silvers, Steve").

There is no requirement that searches be conducted using Proximity Operators. SM Kids employs a document management system that allow searches without Proximity Operators, but its searches fulfill all of the requirements of Fed. R. Civ. P. 26 and the ESI Protocol entered into between the parties. To export the data from SM Kids' system to a different system would involve an expense of over $10,000 with no demonstrable incremental gain in identifying the universe of documents to be reviewed. In an abject attempt to exploit the chasm of recourses available to Google and SM Kids, Google has unjustifiably failed and refused to agree to provide search terms that would satisfy the same purposes as its proposed Boolean searches. For instance, instead of employing a Boolean search for the names of certain individuals using the convention ("first name" /2 "last name") as Google insists, SM Kids is willing to search: (i) "last name, first name"; (ii) "first name, last name"; (iii) "first name, middle initial (to the extent known or discoverable), last name"; (iv) any nickname (to the extent known or discoverable); and (v) any email address (to the extent known or discoverable). SM Kids believes these alternatives would capture the same responsive documents as the ("first name /2 last name") search method while also respecting the technical limitations of SM Kids' search capabilities. Google nevertheless continues to object to these alternatives to the search terms proposed by Google that utilize Proximity Operators, insisting that these searches be conducted in the way it dictates. The Court should not endorse Google's insistence on a search that is extremely burdensome and needlessly expensive to SM Kids.

SM Kids further notes that in addition to running search terms across millions of emails, many of which do not concern this action, SM Kids is manually reviewing every document and file organized by the custodians as relating to Googles without regard to search terms. Given SM Kids extensive efforts, Google's purported fear that it will be deprived of relevant documents is unfounded.

Cooley

(iii) Non-Party Custodians Should Not Be Obligated to Run the Same Searches as the Party Custodians

SM Kids rejects Google's assertion that the non-party custodians identified by SM Kids are obligated to run all (or substantially all) of search terms SM Kids has agreed to for its document collection and review. These third parties not agreed to the ESI protocol governing the parties' discovery and are not subject to the Court's Order, entered October 14, 2020, directing the parties to agree on search terms. Even though some of these non-parties are represented by the same counsel as SM Kids, the burden and proportionality analysis does not militate toward identical treatment. The non-party custodians identified by SM Kids, which includes of five individuals and a number of small companies, plainly do not have the resources available to Google LLC or even SM Kids. While we are in the process of consulting with the third parties on this issue and will advise Google of the search terms appropriate for their document collection efforts by November 2, 2020, in brief, we intend to run search terms nearly as broad (with certain disclosed and agreed upon exceptions) on the corporate non-parties. Individuals with no interest in this lawsuit, whose involvement was brief and ended years ago, ought not to be put through same rigors.

(iv) Search for "Ganz" Is Not Likely To Yield Relevant Materials

Google requests that SM Kids search for "Ganz" because it supposedly seeks documents related to the scope of SM Kids' rights in the GOOGLES trademark relative to Ganz. But as Google acknowledges, the court in the *Ganz* litigation granted summary judgment in favor of Ganz and entered an injunction to this effect. All the information that Google seeks related to the scope of SM Kids' rights is in that injunction, which is publicly available on the *Ganz* docket. Any additional collection and review of Ganz documents is unduly burdensome of the SM Kids' resources and vastly disproportionate to the needs of thiscase

Contrariwise, while SM Kids may have proposed "Ganz" as a search term for Google, Google also objected to the term as "overly broad" and has refused to use it. By Google's logic, if SM Kids' request to use Ganz as a search term establishes that the search term is presumptively relevant, then Google's objection to the search term must also establish that it is presumptively not narrowly tailored to the needs of the case

**2. Google's Position**

Google has significant concerns about SM Kids' approach to searching for documents responsive to Google's Requests for Production.

(i) SM Kids Has Made Inconsistent Representations about the Boxes of Paper Documents It Inherited from Stelor.

At the October 14, 2020 hearing, the Parties discussed an undefined number of boxes containing documents related to Stelor's business. SM Kids invoked these boxes to argue that producing all documents and communications relating to Stelor would be burdensome. ECF No. 123 at 11. SM Kids represented that the boxes contained Stelor's website's "content bible," as well as "videos and computer code and books and music and storylines," and "business documents . . . agreements . . . financials of the company, etc." *Id.* at 16. Counsel for SM Kids further represented "I haven't personally been through every document, nor have we, in fact, been through every document as a team yet." *Id.* The Court commented that SM Kids might be "trying to protect" these documents because either it was "aware of some highly damaging document" or it was "looking for boogeymen that don't exist." *Id.* at 14. The Court subsequently ordered SM Kids to produce the boxes, and to not withhold anything other than privileged materials. *Id.* at 17; ECF No. 118, ¶ 1.

SM Kids now claims it already produced the entire contents of the boxes in 2018, and does not intend to produce the boxes. This new representation is confounding and concerning. Why did SM Kids invoke these boxes in support of the burden of producing documents relating to Stelor at the last conference if it had already produced all of the documents that the boxes contained? Why did SM Kids deliberately avoid acknowledging that the documents in those boxes had already been produced? How did SM Kids not know how many boxes there are if it had collected them in 2018?

Based on this record, Google requests that the Court direct SM Kids to explain how many boxes Steven Garchik inherited from Stelor when he allegedly succeeded to Stelor's rights in the Googles business, where the boxes have been stored since then, whether any of the boxes have been discarded during that period, by whom and when, whether all of their contents have been produced, the Bates-range for those contents, and whether there are any further contents of those boxes to produce.

(ii) SM Kids Has Made Inconsistent Representations about Stelor's Email Server.

In the October 14, 2020 hearing, in the context of discussing the burden to SM Kids of producing emails relating to Stelor, SM Kids said that Stelor had an email server. ECF No. 123 at 14-15. Based on that representation, the Court directed Google to use search terms to search the email server for documents relating to Stelor. *Id.* at 16. SM Kids agreed to use search terms to search the email server for documents relating to Stelor. *Id.* at 42-43. The Court even offered SM Kids the opportunity to negotiate for limits on the number of custodians to be searched and SM Kids represented that it would apply the search terms to all custodians. *Id.* SM Kids now represents that Stelor does not have an email server (or a file server).

Cooley

Based on this record, Google requests that the Court direct SM Kids to explain this troubling inconsistency, including whether Stelor ever had an email or file server or other forms of ESI, whether those servers or ESI were inherited by Garchik (or some other individual or entity), whether any of those sources of ESI might still exist, and, if not, when it was discarded, and by whom, and finally why counsel for SM Kids represented to Google and the Court that it would search Stelor's email server if it in fact did not exist.

(iii) SM Kids Refuses to Conduct a Reasonable Search of SJM Partners' ESI.

Based on SM Kids' now modified representations, Google understands that SM Kids' only source of ESI is the SJM Partners' email server (and possibly file server). SM Kids has only identified two potential custodians for that ESI: Steven Garchick and Tamara DePaolis, the latter of whom is described on SJM Partners' website as the company's development director. Yet, SM Kids is unwilling to conduct a reasonable search on these custodians' emails by extracting their email data for the relevant date range and applying Boolean-style search terms which is a standard and reasonable discovery practice in litigation.

Instead, SM Kids is only willing to search for emails in the way that you might search for the last email from a friend in your inbox, by using the email application's search function. This form of searching email data is unacceptable because it does not support Boolean searches, or the use of wildcard characters.

SM Kids claims 25 million dollars in damages in this case, and seeks to enjoin Google from using its house mark, GOOGLE. ECF No. 1. Google is entitled to the relevant discovery to defend itself in this action. SM Kids has not established that the burden of extracting custodian email data and conducting standard Boolean searches would be disproportionate to the needs of the case. Fed. R. Civ. Pro. 26(b)(2)(B) ("[T]he party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost."). Nor should it be, as that is the method of searching ESI used in nearly every case.

At present, Google is working with SM Kids to find solutions so that Google is not deprived of relevant documents that would have been identified by Google's Boolean search terms. Google reserves its right to object to SM Kids' refusal to run Boolean search terms if the Parties are not able to reach resolution on this issue.

(iv) SM Kids Will Not Agree to Search Terms for Third Parties It Represents.

SM Kids has not yet agreed to run any search terms Google proposed across the third parties it represents, including: Taral Productions, Peace Love Solve, Bungalow Media & Entertainment, Tamara DePaolis, Allan Cohen, David Evans, Robert Friedman, and Matthew Mazer. The Parties are still meeting and conferring on this issue, and will update the Court if there is a dispute.

Cooley

(v) SM Kids Is Unwilling to Use "Ganz" as a Search Term.

Ganz is a Canadian toy company that sued SM Kids for infringing its trademark GOOGLES and breaching a trademark coexistence agreement related to the same mark. *Ganz v. SM Kids, LLC*, 2019 WL 4013970, at *1 (D. Del. 2019). The court in that case granted summary judgment in favor of Ganz, and entered an injunction delineating SM Kids' narrow rights in the GOOGLES trademark. Both Parties in this case proposed "Ganz" as a search term. Despite proposing it as a search term itself, SM Kids objected to applying this term to its documents based on relevance. SM Kids' objection should be overruled. SM Kids' request to use Ganz as a search term establishes that the search term is presumptively relevant. Moreover, even if SM Kids had not chosen Ganz as a search term, the Court should conclude that it is relevant because documents referring to Ganz are likely to be related to the scope of SM Kids' rights in the GOOGLES trademark relative to Ganz; and the scope of SM Kids' alleged rights in the mark is relevant to whether Google's conduct is likely to create confusion.

**B. Google's Documents**

**1. SM Kids' Position**

SM Kids proposed the following search terms, to which Google objected, to target documents that will: (i) reflect Google's understanding of the phrase "create, develop and publish" children's entertainment content from Section 7 of the Settlement Agreement; and (ii) reflect the processes used by Google to curate the third-party children's entertainment content published and distributed through Google Play and YouTube Kids. These search terms were proposed in connection with Google's responses to SM Kids' RFPs 18 and 21, in which Google agreed to produce document sufficient to describe the "purpose, functionality, or features" of Google Play and to describe the service provided by YouTube Kids, respectively.
SM Kids has proposed the following search terms to which Google has objected:

- "Google w/20 ("curat!" "publish!" "distribut!" "creat!")
- Sell! /s third /2 party
- Publish! /s third /2 party
- Distribut! /s third /2 party

Google has objected to these search terms on the grounds that it has not agreed to produce documents concerning the methods and processes Google uses to curate the children's entertainment content offered through Google Play and YouTube Kids, and that it agreed only to produce documents sufficient to identify the children's content it offers in connection with Google Play and YouTube Kids in responses to SM Kids' RFPs 17-24.

Plaintiff has heeded the Courts' position that it should not seek voluminous amounts of documents with respect to Google's offerings in the children's entertainment space and,

Cooley

accordingly did not move this Court with respect to Google's assertion that it would only produce documents sufficient to identify the children's entertainment products offered by Google in response to SM Kids' RFP 24. Similarly, SM Kids is not objecting to Google's objections on certain other search terms that it argues are unnecessary in light of Google's objection and response to RFP 24.

However, SM Kids' theory of the case is that Google has violated the Settlement Agreement by, among other things, publishing, distributing, and creating children's entertainment content available through Google Play and YouTube Kids as well as by curating third-party children's entertainment content published and distributed through those platforms. SM Kids must be able to seek discovery on Google's understanding of the meaning of the settlement and on Google's actions that SM Kids alleges breach the Settlement Agreement. Moreover, Google has agreed to produce documents concerning the "purpose, functionality, or features" of Google Play and the service provided by YouTube Kids, both of which undoubtedly include Google's methods and processes to curate, publish, or distribute content on those platforms. These documents are critical to exhibit what Google, as demonstrated through its actions, understands the words "create, develop and publish" mean. Google cannot now rewrite its responses to SM Kids' discovery requests through search term negotiations.

**2. Google's Position**

SM Kids requests that Google apply dozens of search terms that are intended to cull documents relating to children's content, YouTube Kids, and Google Play, irrespective of whether those documents would have any relationship to the Settlement Agreement. For example, SM Kids has requested the following search terms: "animat! /s content!" or "cartoon!" or "video! w/ 10 child" or "program! w/ 10 family." In response to SM Kids' requests for all documents related to children's offerings, Google objected and agreed to provide documents *sufficient to show* content (i) created, designed or published by Google after 2013 that has a title of GOOGLE or a GOOGLE-formative title or mark, and (ii) which content was not sold, published or distributed by third parties. Google also agreed to provide documents sufficient to describe the "purpose, functionality, or features" of Google Play, and documents sufficient to describe the service provided by YouTube Kids. Google served these objections on August 14 and September 4, 2020, and SM Kids decided to forgo the opportunity that the Court offered it at the last conference to move to compel a broader production for documents relating to Google's children's content. Google has already begun collecting and producing the documents responsive to these requests. Therefore, applying broad search terms is unnecessary and not remotely proportionate to the needs of the case. To the extent Google has any emails that relate to both children's content and the Settlement Agreement or SM Kids, such documents will be culled by the existing agreed-upon search terms that were intended by both parties to identify documents relating to those topics (*e.g.*, the Settlement Agreement, the GOOGLES mark, or the Googles business).

Cooley



Sincerely,

Cooley LLP

By: _/s/ *Ian Shapiro*_________

Ian Shapiro
*Attorneys for Defendants*

Davis Wright Tremaine LLP

By: *s/ John M. Magliery*

John M. Magliery
*Attorneys for Plaintiff SM Kids, LLC*

236528327

ENDORSEMENT: In its discretion, the Court hereby resolves the parties' discovery disputes, as follows:

1) Pursuant to Judge Schofield's Individual Rule II(A)(1)(b), except as otherwise stipulated by the parties, the date range to be searched shall commence no earlier than February 23, 2013. The Court does not find that good cause exists to justify a date range for RFP 15 and 16 starting on January 1, 2005. Rather, Defendants' agreed-upon start date for RFP 15 and 16 of January 1, 2008 is reasonable.
2) No later than October 30, 2020, Plaintiff shall disclose to Defendants the third-party custodians from whom it intends to collect documents.
3) No later than October 30, 2020, Defendants shall advise Plaintiff whether they agree to search the records of Tim Alger, Pavni Diwanji, Shimrit Ben-Yair and Malik Ducard as custodians.
4) Based upon the representations made in this letter by Plaintiff's counsel, the Court shall enter no orders at this time regarding the subject boxes, email server or file server; Defendants may inquire at depositions about them.
5) The parties shall continue to meet and confer regarding Plaintiff's use of Boolean search terms, as well as the search terms to be used by third-party custodians, and seek Court intervention, as needed.
6) With respect to the search term "Ganz," either both parties shall use it as a search term, or neither shall do so. If it is agreed that both parties will use that search term, and an excessive number of hits results from use of that term, the parties shall meet and confer to seek to minimize any undue burden.
7) On proportionality grounds, the Court does not compel Defendants to use the four sets of search terms to which Defendants object.

SO ORDERED.
Dated: 10/24/2020