Cooley


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/9/2021

Ian Shapiro
+1 212 479 6441
ishapiro@cooley.com

Via CM/ECF

March 8, 2021

The Hon. Stewart D. Aaron
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *SM Kids, LLC v. Google LLC*, et al. (18-cv-2637 (LGS) (SDA))

Dear Judge Aaron:

We represent Defendants Google LLC, Alphabet Inc., and XXVI Holdings Inc. (collectively, "Google") in this case and write jointly with Plaintiff SM Kids, Inc. ("SM Kids") to set out the parties' respective positions concerning documents on the privilege logs produced by SM Kids and the third parties represented by Davis Wright Tremaine LLP ("DWT") in light of the Court's Opinion and Order dated February 23, 2021. On March 2, 2021, the parties met and conferred to discuss the parties' respective positions in light of the Court's Opinion and Order. (ECF No. 206). Pursuant to the Court's order, the parties' positions are set forth below.

Summary of the Parties' Positions

A. Google's Position

In light of the Court's order, Google identified the documents that should be produced from SM Kids' log and the logs from the third parties that DWT represents. For the Court's convenience, Google has prepared an exhibit containing the entries for each individual or category of individuals whose communications Google contends should be produced. (*See* Exs. 1-6). Each exhibit includes a column that tells the Court the log from which the entry came. Google's positions in this letter are limited to the principles set forth in the Court's Opinion and Order. However, Google respectfully intends to object to certain portions of the Court's Opinion pursuant to Rule 72 and reserves its right to seek the production of additional documents based on the District Court's ruling on Google's objections.[1]

Google's positions include the individuals and categories of individuals included in Google's initial pre-motion letter (ECF No. 187) as well as the individuals and categories of individuals addressed in the second pre-motion letter (ECF No. 203), which Google withdrew in anticipation of the Court's anticipated Opinion and Order. Google renews its motion to compel

[1] In particular, Google intends to object to the rulings that Garchik's communications with Mazer, Cohen, Friedman and Salmansohn are privileged because they were his agents regardless of whether they were necessary to enable Garchik to obtain legal advice. (ECF No. 206 at 12, 15, 16, 21, 23). Google also intends to object to the ruling that Cohen and Garchik were joint clients of Wyman after March 2, 2014 and that Garchik was Wyman's client from March 2, 2014 to September 16, 2015, when Garchik executed an engagement agreement with Wyman's then firm, DWT. (*Id.* at 16). Google also intends to object to the finding that Jared Lader was the functional equivalent of an employee of Taral Productions. (*Id.* at 20).

communications with those individuals and categories of individuals based on the legal principles set forth in the Court's Opinion.

In this letter, Google also brings certain additional challenges to SM Kids' privilege logs, including the third-party logs, in an effort to include all of the potentially outstanding challenges to SM Kids' logs in one letter.

Pursuant to the Court's Order (ECF No. 206), Google presented its positions on these individuals and categories of individuals last Tuesday, March 2. SM Kids did not present its position on Google's challenges until 3:32 pm this afternoon, making it impossible to meet-and-confer further (although we offered) and extremely difficult to respond to the substance of SM Kids' positions in this letter. Thus, although Google has sought to be as responsive as possible to SM Kids' just-articulated position on some of these challenges, Google respectfully requests the opportunity to provide further letter briefing where the factual or legal record is insufficiently developed in this letter.

B. SM Kids' Position

Since the Parties met and conferred last Tuesday on March 2, as ordered by the Court, Google has raised numerous new privilege issues in the last 48 hours. All of these issues can be resolved under the Court's existing guidance and through meet and confers, but Google has apparently abandoned a good faith meet and confer process in favor of litigation by ambush at the eleventh hour.

As a threshold matter, SM Kids objects to Google's intention to violate Rule I(A) of Your Honor's Individual Practices. Google sent SM Kids a ten-page legal brief at 11:14 PM Eastern time on March 8, 2021 styled as a joint letter. Google has not provided SM Kids any exhibits. SM Kids had already prepared a succinct update for the Court in compliance with Rule (I)(A) and the Court's instruction that "the parties shall file a joint letter with the Court advising the Court of the status of the meet and confer process," ECF No. 206, "identifying the parties' positions concerning the privilege logs." ECF No. 209. Google failed to meet and confer with SM Kids in good faith on all of the issues discussed in Google's section of this letter. Further, SM Kids has not had a reasonable opportunity to review and respond to Google's new privilege challenges and is prejudiced by Google's attempt to shoehorn legal briefing into a joint status report to the Court with 46 minutes to review. Despite this improper procedure, SM Kids sets forth below its report on the status of the meet and confer process and its positions on its privilege log in light of the Court's Order, as the Court has requested.

***Google's Planned Appeal.*** SM Kids has learned for the first time today, at 11:14 PM, that Google will appeal the Court's February 23, 2021 Order. This news strongly militates in favor of a stay of all privilege disputes and privilege-related document production. A stay would be appropriate and sensible given that the parameters of the privilege in this case may change, and SM Kids would be prejudiced in making decisions to withdraw assertions of privilege in reliance on the Court's Order while Google appeals the Court's Order. A stay is further warranted to avoid the unnecessary expense in reviewing a privilege log twice. Assuming that Google follows through with its planned objections, SM Kids respectfully requests that the Court grant a stay of all other privilege-related production and disputes in this case until Judge Schofield resolves Google's objections. All of SM Kids' positions set forth below were prepared in reliance on the Court's Order.

***Status of the Meet and Confer Process.*** The Court provided extensive and thorough guidance on the applicable law respecting privilege issues in this case on February 23, 2021 (the "Order"). SM Kids is carefully abiding by the Court's Order. Notwithstanding the fact that the parties have extensively briefed a host of privilege issues in dozens of pages of letters, and that the Court has already reviewed 25 documents in camera, Google continues to press old and new challenges to SM Kids' privilege log with the apparent twin aims of prolonging the period for discovery and draining SM Kids' resources on skirmishes that do not go to the heart of this case. Although Google's contentions lack merit, SM Kids has met and conferred and will continue to meet and confer with Google in good faith, including with respect to new challenges that Google has raised as recently as Sunday, March 7, and today, March 8, at 11:58 AM Eastern (by email concerning BCC entries) and at 11:14 PM Eastern (by sharing for the first time the 10-pages of new argument and challenges set forth in Google's letter here).

SM Kids has worked diligently to reconsider its privilege assertions and to meet and confer with Google. On February 22, 2021, Google withdrew its letter concerning certain "third party" privilege disputes on the same day that Google filed it. Google filed that letter without the benefit of the hearing later that day or the Court's Order. Mr. Shapiro stated on the record that Google was withdrawing the letter because it needed time to consider the Court's Order. The Court issued the Order the next day, February 23.

SM Kids did not hear from Google regarding any privilege challenge until March 2. On that day, SM Kids produced the seventeen documents that the Court identified as not privileged or as partially privileged and requiring redactions. On the same day, March 2, counsel for SM Kids and Google met and conferred at Google's request. Google asserted a number of blanket challenges on that phone call, informing SM Kids that Google was standing by all of the challenges made in its withdrawn letter despite that the letter was withdrawn and the Court had since issued its Order resolving the parties disputes. At that time, Google did not challenge any specific log entries by document ID or otherwise. Since March 2, SM Kids has been evaluating its privilege log to respond to Google's challenges with SM Kids' positions, which are informed by the Order. SM Kids provided those positions today, March 8, at 3:32 PM Eastern, and agreed to produce a number of documents off of its log. This process required significant review and consultation with our client. SM Kids will begin a rolling production this week of the documents over which it has withdrawn assertions of privilege in light of the Court's Order.

On Sunday, March 7, at 9:46 PM Eastern, Google raised new challenges to privilege log entries involving certain names for the first time (Tara Cohen, Zach Dennis, Michael Levine, Tim Quinn, and Tom Shane). This email sent Sunday night was the first communication from Google that challenged specific log entries in writing since the prior round of privilege briefing. SM Kids is reviewing these materials and contentions and has offered to meet and confer with Google this week. Today, March 8, 11:58 AM Eastern, Google also raised a new issue for first time concerning possible BCC entries on SM Kids' privilege log. SM Kids is reviewing that issue and has offered to meet and confer with Google this week.

Below, SM Kids sets forth the exact, unedited positions that SM Kids sent Google earlier today at 3:32 PM Eastern. SM Kids has not had sufficient time to prepare written responses to Google's legal arguments on these issues, provided for the first time at 11:14 PM Eastern.

**2. Matt Mazer (18 entries)**

A. Google's Position

The Court held that communications between Stephen Garchik and Matthew Mazer were privileged because "Mazer was acting as an agent for Garchik." (ECF No. 206 at 15). Yet, Mazer did not become Garchik's agent until June 4, 2013 at the earliest. (SMKIDS005773 & SMKIDS005774). On this date, Garchik revised the engagement letter Mazer had provided, and returned it to Mazer. *Id.* This is the earliest possible meeting of the minds on the parties' arrangement.

While this is the principle the Court applied in deciding when Bungalow and Salmansohn became Garchik's agent, SM Kids is unwilling to apply this principle here, and has argued without citation (Ex. 9) that Garchik engaged Mazer before that date. The burden is on SM Kids to establish the privilege based on competent evidence, and SM Kids' uncited argument is insufficient to carry its burden.

Therefore, SM Kids must produce Garchik's communications which include Mazer and which are dated before June 4, 2013. (*See* Ex. 1).[2]

B. SM Kids' Position

Mr. Garchik engaged Mr. Mazer as an agent before June 4, 2013. Indeed, the Court has reviewed in camera an email with Mr. Mazer dated from before June 4, 2013 and deemed it privileged. ECF No. 206 at 16 (Doc. No. 20201106_817-000022018). Google should abide by the Court's Order and not waste the Court's time or the parties' resources re-litigating what the parties briefed and brought before the Court only a few weeks ago.

**3. Allan Cohen (34 entries)**

A. Google's Position

In an email today at 3:32 pm, SM Kids agreed to produce communications with either Allan Cohen, Jared Lader, or Bob Wyman that predate March 2, 2014. There should be no further disputes in this category.

B. SM Kids' Position

SM Kids will abide by the Court's Order and produce emails on its privilege log between Mr. Garchik and Taral or Mr. Garchik and Wyman prior to March 2, 2014.

[2] In the Opinion and Order, the Court held that one of the exemplars that SM Kids submitted in camera, Doc. No. 20201106_817-000022018, was privileged because "it reflects a request for legal advice by Garchik to an attorney at the Finnegan law firm . . . . [which] remained privileged even though it was forwarded to Mazer because Mazer was acting as an agent for SJM." (ECF No. 206 at 16). However, this April 10, 2013 communication predates Garchik's June 4, 2013 engagement of Mazer. (SMKIDS005773 & SMKIDS005774). Therefore, pursuant to the principles the Court set forth in its Opinion, this document should be produced.

**4. Bungalow & Salmansohn (88 entries)**

A. Google's Position

In an email today at 3:32 pm, SM Kids agreed to produce Garchik or Cohen's communications with Bungalow or Salmansohn before July 17, 2016. There should be no further disputes in this category.

B. SM Kids' Position

SM Kids will abide by the Court's Order and will produce emails on its log exchanged with Ms. Salmansohn dating before July 17, 2016.

**5. Sayles & Winnikoff (3 entries)**

A. Google's Position

In an email today at 3:32 pm, SM Kids agreed to produce communications with Sayles & Winnikoff. There should be no further dispute in this category.

B. SM Kids' Position

SM Kids will produce emails on its privilege log with Sayles & Winnikoff because, upon further review, they are not of a predominantly legal character and they do not contain or reflect legal advice or a request for legal advice.

**6. Steve Esrig, Jeff Linowes, Mark Silverman, Barry Wilson, Scot Thomas, and Sam Wilson (42 entries)**

A. Google's Position

These individuals were employees or directors of Stelor Productions, LLC ("Stelor"). Garchik was a director of Stelor Productions until December 3, 2008 when he resigned as a result of Stelor's failure to repay $3 million in promissory notes. (*See* SMKIDS000199). On December 30, 2008, Garchik sent a demand letter to Stelor threatening to sue to enforce the notes (SMKIDS000273 at 305), and then Garchik sued Stelor in Maryland state court on January 21, 2009 (GOOG-SMKIDS-00000385; GOOG-SMKIDS-00000155).[3] Garchik's communications with these individuals after his resignation, when he was adverse to Stelor, are not privileged. None of these individuals were Garchik's agents, and he never shared any common legal interest with them. *See Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 637 (2016) ("Disclosure is privileged between codefendants, coplaintiffs or persons who reasonably anticipate that they will become colitigants.").

Of the 42 withheld or redacted communications that include these individuals, SM Kids also withheld or redacted 12 of them based on the work product doctrine. These 12 were dated between December 2008 and October 2009 when Garchik was adverse to Stelor. Thus, the work product doctrine does not apply. *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) (holding that "disclosure of work product to an adversary waives the privilege as to other parties for work product").

[3] Garchik's state court case against Stelor did not conclude until November 7, 2011. (GOOG-SMKIDS-00000385).

SM Kids contends that Garchik and the individuals in this category were joint clients of Stelor's counsel in the bankruptcy. This is not the case, as the parties were represented by separate counsel in both the bankruptcy and the Maryland state case. (GOOG-SMKIDS-00005455; GOOG-SMKIDS-00005699; GOOG-SMKIDS-0000038). SM Kids also contends that Garchik and these individuals shared a common interest. Yet, none of these parties were co-litigants with Garchik or anticipated becoming co-litigants with Garchik in either the bankruptcy case or the state court litigation. *Ambac Assur. Corp.*, 27 N.Y.3d at 637. To the contrary, as representatives of Stelor, their interests were adverse to Garchik's as a secured creditor or plaintiff in the state court case.

In an email at 3:32 pm today, SM Kids agreed to produce communications with these Stelor employees or directors after May 3, 2011, when the Stelor bankruptcy proceeding converted to a Chapter 7 case. Thus, in the period after May 3, 2011, there should be no further dispute in this category.

For the foregoing reasons, Garchik's communications with these Stelor employees and directors in the period between December 3, 2008 and May 3, 2011 should be produced. (*See* Ex. 2).

B. SM Kids' Position

Mr. Garchik and the employees or directors of Stelor Productions, LLC were joint clients of Stelor's counsel and cooperated to preserve the value of Stelor Productions and the Googles business as a going concern up until the date that the Stelor bankruptcy converted to Chapter 7 on May 3, 2011. In the context of bankruptcy litigation, Mr. Garchik also shared a common interest with Stelor and Stelor's agents in preserving the value of Stelor's intellectual property against any party that might have an interest in Stelor losing the value of its intellectual property. SM Kids will produce emails on its privilege log exchanged with these Stelor agents dated after May 3, 2011.

**7. Roger Shiffman (104 entries)**

A. Google's Position

Shiffman became Stelor's CEO in or around June of 2010, while Stelor was in bankruptcy. (GOOG-SMKIDS-00005455). Garchik was the company's principal secured creditor (GOOG-SMKIDS-00005617) in the bankruptcy and had also sued Stelor in Maryland state court to foreclose on the collateral for loans made to the company by him and certain affiliated companies and persons. Thus, he was adverse to the company throughout the bankruptcy and the pendency of his state court case, which concluded on November 15, 2011. (GOOG-SMKIDS-00005455).

SM Kids argues that during the bankruptcy, Shiffman was Stelor's agent, and Garchik and Shiffman were, therefore, "joint clients of Stelor's counsel and cooperated to preserve the value of Stelor Productions and the Googles business as a going concern" through the date that the case converted to Chapter 7. (Ex. 9). For the reasons described with respect to the other employees and directors of Stelor, SM Kids cannot establish that Shiffman and Garchik were joint clients of Stelor's counsel. Stelor and Garchik had separate counsel in both the bankruptcy and the Maryland state case. (GOOG-SMKIDS-00005455; GOOG-SMKIDS-00005699; GOOG-

SMKIDS-00000385), and as a secured creditor and plaintiff in the state court case, Garchik was adverse to Stelor. Thus, communications with Shiffman should be produced. (*See* Ex. 3).

In an email at 3:32 pm today, SM Kids agreed to produce communications with Shiffman dated after May 3, 2011, when the case converted, provided Google agrees not to argue that SM Kids' disclosure of these documents constitutes a subject matter waiver. Google will agree to that position, and therefore, in the period after May 3, 2011, there should be no further dispute in this category.

B. SM Kids' Position

As Google acknowledges, Roger Schiffman became the CEO of Stelor when it was going through the bankruptcy process. Mr. Shiffman was an agent of Stelor. Mr. Garchik and the agents of Stelor were joint clients of Stelor's counsel and cooperated to preserve the value of Stelor Productions and the Googles business as a going concern up until the date that the Stelor bankruptcy converted to Chapter 7 on May 3, 2011. After the bankruptcy, Mr. Garchik engaged Mr. Shiffman to further develop the Googles business and intellectual property, as Google acknowledged in its withdrawn letter dated February 22, 2021. However, assuming Google will agree that Mr. Garchik's discussions with Mr. Shiffman, a former CEO of Stelor, about developing the Googles business post-bankruptcy do not establish subject-matter waiver with respect to otherwise privileged matters, SM Kids will agree to produce emails with Mr. Schiffman dated after May 3, 2011.

**8. Ted Koenig (37 entries)**

A. Google's Position

Koenig, through his company Monroe Capital, was an investor in Stelor. (SMKIDS024981). He also briefly became a director of Stelor during the company's bankruptcy. (*See* GOOG-SMKIDS-00005455). As a Stelor director during the bankruptcy case, he was adverse to Garchik, who was the company's principal secured creditor (GOOG-SMKIDS-00005617) and had a pending lawsuit against the company to foreclose on the company's assets. He was not Garchik's agent, nor did he ever share a common legal interest with Garchik. *See Ambac Assur. Corp.*, 27 N.Y.3d at 625 (holding that common interest privilege only applies to co-litigants in pending or anticipated litigation).

SM Kids also invokes the work product doctrine to withhold ten of Garchik's communications with Koenig in May of 2010. SM Kids' log does not identify the pending or anticipated litigation that would support the invocation of the work product doctrine. In any case, Garchik was adverse to Stelor in May of 2010, and, therefore, the work-product doctrine could not apply. *In re Steinhardt Partners, L.P.*, 9 F.3d at 235.

In an email today at 3:32 pm, SM Kids wrote that Ted Koenig was an "investor, director and advisor" for Stelor, and therefore, as an agent for Stelor, Koenig and Garchik were joint clients of Stelor's counsel during the bankruptcy. (Ex. 9). For the reasons described in relation to the other Stelor officers and directors, Garchik and Stelor had separate counsel in the bankruptcy (GOOG-SMKIDS-00005455; GOOG-SMKIDS-00005699) and the Maryland state case (GOOG-SMKIDS-00000385), Garchik was adverse to Stelor, and they could not have been joint clients of Stelor's counsel.

For the forgoing reasons, communications with Koenig should be produced. (*See* Ex. 4).

B. SM Kids' Position

Google practically acknowledges that Mr. Koenig was an agent of Stelor as an investor, director, and advisor for Stelor. Mr. Garchik and the agents of Stelor were joint clients of Stelor's counsel and cooperated to preserve the value of Stelor Productions and the Googles business as a going concern up until the date that Stelor bankruptcy converted to Chapter 7 on May 3, 2011. After that date, like Schiffman, Mr. Garchik engaged Mr. Koenig to further develop the Googles business and intellectual property. SM Kids has not identified any such documents on its privilege log dated after May 3, 2011.

**9. Joseph Hennessy (3 entries)**

A. Google's Position

In an email today at 3:32 pm, SM Kids agreed to produce all communications including Hennessy. There should be no further dispute in this category.

B. SM Kids' Position

SM Kids will produce the two emails on its privilege log exchanged with Joseph Hennessy.

**10. Andrew Smith (2 entries)**

A. Google's Position

In an email today at 3:32 pm, SM Kids agreed that it would produce all communications including Smith. There should be no further dispute in this category.

B. SM Kids' Position

SM Kids will produce the two emails on its privilege log exchanged with Andrew Smith.

**11. Phil Peckman (6 entries).**

A. Google's Position

SM Kids agreed at 3:32 pm today that it would produce communications not protected by work product. No further dispute remains.

B. SM Kids' Position

Mr. Peckman was an investor in Stelpro and an advisor to Mr. Garchik. Google does not challenge log entries protected as work product, as work product shared with Mr. Peckman would not be waived. SM Kids will produce documents on its log exchanged with Mr. Peckman to the extent those documents are not protected work product.

**12. Lucille Frand (2 entries)**

A. Google's Position

In an email today at 3:32 pm, SM Kids agreed to produce Garchik's two communications with Frand. There should be no further dispute in this category.

B. SM Kids' Position

SM Kids will produce the two documents on its privilege log addressed to Ms. Frand.

**13. Sydne Garchik, Sandy Garchik Katzman, Lori Esrig, Rob Rothstein, Bruce Auerbach, Richard Rakowski, Tara Cohen (72 entries)**

A. Google's Position

Each of these individuals is either a relative or friend of Garchik (Lori Esrig was Steve Esrig's wife and Garchik's sister-in-law).[4] None of these seven individuals was an employee or consultant to Stelor or any of the other companies that Garchik contends have ever owned the GOOGLES mark. None of them was Garchik's agent and none shared a common legal interest with Garchik.

In an email today at 3:32 pm, SM Kids wrote that Sydne Garchik (Garchik's daughter) and Sandy Garchik Katzman are investors, advisors, and agents of Mr. Garchik, and therefore his communications with them are privileged. (Ex. 9). The burden is on SM Kids to establish the privilege through competent evidence, and SM Kids has produced no evidence that identifies either as an agent, when they became an agent, or the purpose or scope of their agency. Thus, these communications should be produced.

In an email today at 3:32 pm, SM Kids wrote that Lori Esrig shared a common legal interest with Mr. Garchik in Stelor's lawsuit against Google and in the bankruptcy case. The communications with Lori Esrig that SM Kids withholds are dated October 8, 2009, July 1, 2016, and May 3, 2017, all of which are after Stelor's lawsuit against Google that had settled. Thus, they could not have had a common legal interest in that lawsuit as of those dates. Nor could they have had a common legal interest in the bankruptcy case in 2016 and 2017, when the bankruptcy was long over. For the 2009 communication, SM Kids has provided no basis for concluding that they had a common legal interest in the bankruptcy case. Further, in the Maryland state case, Lori Esrig was a *defendant*, and Garchik was the *plaintiff*. (GOOG-SMKIDS-00000385). Unlike Garchik, Lori Esrig was not a litigant in the bankruptcy case, and, if she did have an interest in Stelor through her husband Steve Esrig, then her interest in the bankruptcy case would have been adverse to Garchik's interest as a secured creditor.

In an email today at 3:32 pm, SM Kids wrote that Rob Rothstein was an investor in Stelor who shared a common legal interest with Mr. Garchik in the success of Stelor. The communications between Garchik and Rothstein which Google challenges are dated between 2008 and 2011. SM Kids has not identified any pending or anticipated proceeding in which Garchik and Rothstein were co-litigants in that period, and as the burden is on SM Kids to establish the privilege, the Court should not credit SM Kids' conclusory assertion that they did share such an interest. Nor could they share such an interest in the period after December 3, 2008 when Garchik was adverse to Stelor.

In an email today at 3:32 pm, SM Kids wrote that Google had not identified any withheld communications including Bruce Auerbach. SM Kids withheld communications including the

[4] The disclosure of privileged communications to relatives waives the privilege to the same extent as any other third party who is not a necessary agent of the client. *See United States v. Stewart*, 287 F. Supp. 2d 461, 464 (S.D.N.Y. 2003) (client "waived [attorney-client] privilege by forwarding a copy of the e-mail to her daughter").

email addresses bla1776@ureach.com and bla1776@yahoo.com, which Google believes belong to Bruce Auerbach. SM Kids does not argue that communications with Auerbach are privileged.

The communications concerning the aforementioned individuals should be produced. (*See* Ex. 5).

In an email today at 3:32 pm today, SM Kids agreed that it would produce communications with Rakowski. No further dispute remains as to communications involving him.

SM Kids requested to meet and confer further regarding communications including Tara Cohen, and Google agrees to do so.

B. SM Kids' Position

Sydne Garchik is an investor, advisor, and agent of Mr. Garchik. Privileged communications shared with Sydne Garchik as Mr. Garchik's agent remain privileged. The same applies to Sandy Garchik Katzman. Lori Esrig shared a common legal interest with Mr. Garchik in Stelor's success as a going concern during the bankruptcy litigation and in prevailing in litigation against Google. Rob Rothstein was an investor in Stelor who shared a common legal interest with Mr. Garchik in the success of Stelor as a going concern and the preservation of the Googles intellectual property in the bankruptcy. SM Kids has not identified a privilege log entry involving Auerbach. SM Kids will produce the two emails on its privilege log exchanged with Rakowski.

**14. Eric Blake (7 entries)**

A. Google's Position

Eric Blake is the name used by an unknown individual who impersonated a Google in-house lawyer in 2014 and accused Garchik of trademark infringement. (SMKIDS013759). SM Kids withheld six emails written by Blake and one attachment. When Google asked about these entries, SM Kids said they had already been produced. (ECF No. 203-10). But with respect to the specific entries on the log, SM Kids wrote: "Each of the documents you have identified . . . are members of cover emails that have the same Eric Blake emails as attachments" and "[t]he attachments are integral to privileged attorney-client communications concerning legal advice." *Id.* Google does not understand the significance of that explanation, including why the attachments to the cover email have not been produced and why the cover email has not been logged.

In an email today at 3:32 pm, SM Kids wrote that these emails were attached to privileged emails seeking advice from outside counsel about Blake. If so, then SM Kids should produce them as non-privileged attachments. (*See* Ex. 6).

B. SM Kids' Position

On February 10, 2021, SM Kids provided Google its position on the Eric Blake privilege log entries, which we restate here. SM Kids has produced all communications exchanged with Eric Blake except for identical copies of those emails, which were attached to privileged emails seeking advice from counsel about Blake. Google has no right to the privileged emails and has no need to receive identical copies of the non-privileged emails.

**15. Zach Dennis (4 entries)**

A. Google's Position

Zach Dennis is a freelance media expert who assisted with googles.com press efforts sporadically between 2016 and 2020. There is no evidence that he was Garchik's agent or shared a common legal interest with him and there is no basis for extending the privilege to include communications with Dennis.

In an email today at 3:32 pm, SM Kids asked for the opportunity to meet and confer further on Dennis's emails, and Google agrees.

B. SM Kids' Position

SM Kids objects to Google's attempt to raise these new issues before the Court before the issues are ripe, before SM Kids has had sufficient time to review, and before the parties have met and conferred on these issues.

**16. Michael Levine (3 entries)**

A. Google's Position

Michael Levine is a branding consultant. There is no evidence that he was Garchik's agent or shared a common legal interest with him, and there is no basis for extending the privilege to include communications with Levine.

In an email today at 3:32 pm, SM Kids asked for the opportunity to meet and confer further on Levine's emails, and Google agrees.

B. SM Kids' Position

SM Kids objects to Google's attempt to raise these new issues before the Court before the issues are ripe, before SM Kids has had sufficient time to review, and before the parties have met and conferred on these issues.

**17. Tim Quinn (2 entries)**

A. Google's Position

Tim Quinn is the Chairman of Peace Love Solve. Peace Love Solve is a website operated by Garchik's wife, Marla Garchik. Quinn participated in adding GOOGLES-branded apparel to the Peace Love Solve website. None of the exceptions to waiver apply to Garchik's or Cohen's communications with Quinn.

In an email today at 3:32 pm, SM Kids asked for the opportunity to meet and confer further on Quinn's emails, and Google agrees.

B. SM Kids' Position

SM Kids objects to Google's attempt to raise these new issues before the Court before the issues are ripe, before SM Kids has had sufficient time to review, and before the parties have met and conferred on these issues.

**18. Tom Shane (8 entries)**

A. Google's Position

According to SM Kids, Tom Shane is a bankruptcy attorney in Maryland. SM Kids withheld seven communications involving Shane which purportedly concern "a 2009 litigation involving Stelor and Mr. Garchik" which are purportedly "protected by the common interest privilege." SM Kids does not identify the litigation. Nor has SM Kids explained how Garchik and Shane were co-litigants, and nothing in the record supports the conclusion that there was a common legal interest. SM Kids further withheld one document it claims is not "relevant" to the instant claims or defenses – but does not assert that the document is not responsive to Google's document requests.

In an email today at 3:32 pm, SM Kids asked for the opportunity to meet and confer further on Shane's emails, and Google agrees.

B. SM Kids' Position

SM Kids objects to Google's attempt to raise these new issues before the Court before the issues are ripe, before SM Kids has had sufficient time to review, and before the parties have met and conferred on these issues.

**19. Irregularities in the Third Parties' Privilege Logs**

A. Google's Position

In the course of reviewing SM Kids' privilege logs, including the third party logs, Google observed that certain entries did not include anyone who was employed by the party that had produced the log. For example, Document No. 20201130_205-000195327 in Bungalow's log is a communication between Marla Garchik and Tammy DePaolis, but the entry did not include anyone with a Bungalow email address. This example, and many others that Google identified on SM Kids' log, suggest that SM Kids might not have logged the recipients of blind copies. Google provided SM Kids with 28 similar examples and asked SM Kids to explain, including whether SM Kids had neglected to log the recipients of blind copies. SM Kids was unable to confirm that it had included blind-copied recipients, or to offer a different explanation for the examples SM Kids provided. Google is prepared to meet and confer further with SM Kids on this point.

B. SM Kids' Position

SM Kids objects to Google's attempt to raise these new issues before the Court before the issues are ripe, before SM Kids has had sufficient time to review, and before the parties have met and conferred on these issues.

**20. *In Camera* Review**

A. Google's Position

Google is concerned that there are many more documents on SM Kids' logs and the third party logs that should be produced. Google's concern is based on the fact that of the 29 exemplars submitted to the Court for *in camera* review, 17 of them were determined to be not privileged, either in their entirety (in some cases by SM Kids even before the Court ruled) or in part. (ECF No. 206). That is an extremely high percentage of improperly withheld documents for an *in camera* review, especially where, as here, SM Kids was permitted to cherry pick what it believed to be the documents most likely to be found privileged, and Google was choosing blind. In addition, as of

3:32 pm this afternoon, SM Kids conceded that an additional 213 emails on its log should not have been withheld. That is nearly two-thirds of the 369 documents that Google challenged as part of the meet-and-confer process.

Given that unacceptably high percentage of improperly withheld documents, Google requests a further *in camera* review of two categories of documents for which the log entries do not establish a *prima facie* claim of privilege.

First, Google requests an *in camera* review of communications between non-lawyers. Excluding the documents challenged in this letter as part of the meet-and-confer process, SM Kids' log and the third party logs include an additional 871 documents in this category. (Ex. 7). SM Kids does not claim work product for any of the documents in this category. For communications between non-lawyers, SM Kids must establish that the communications were "made in order to assist in obtaining or providing legal advice or services to the client." *FPP, LLC v. Xaxis US, LLC*, 2016 WL 1733466, at *2 (S.D.N.Y. 2016) (internal citations and quotation marks omitted). This circumstance generally applies within a corporation when the company's lawyers must rely on communications between non-lawyers either to disseminate legal advice throughout the organization or to obtain information from employees of the organization which the lawyer needs to provide legal advice. *See Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 169 (S.D.N.Y. 2008) (explaining that "even where materials are shared within a corporate organization, a corporation asserting the attorney-client privilege has the burden of showing 'that it preserved the confidentiality of the communication by limiting dissemination only to employees with a need to know.'" (internal citation omitted)). In this case, there are few, if any, employees of the companies that purported to own googles.com and the GOOGLES mark, and Google submits that it is highly unlikely that many of the 871 communications in this category could be described as having been sent for the purpose of facilitating the receipt or dissemination of legal advice within an organization. If only a fraction of these communications are non-privileged, then it would result in the production of hundreds of additional relevant emails that have yet to be produced in the case.

Second, Google requests an *in camera* review of communications authored by a non-lawyer and sent to at least three different recipients, only one of which is a lawyer. Excluding the documents challenged in this letter, SM Kids and the third party logs include 342 documents in this category. (Ex. 8).

In identifying these documents in this category, Google did not count employees of SJM Partners, other than Garchik. Google only included documents in this category if three parties to the communication were non-lawyers, and at least two were third parties. The fact that a lawyer is included as a recipient is not sufficient to establish that the predominant purpose of the communication was to obtain legal advice. *In re Signet Jewelers Ltd. Sec. Litig.*, 332 F.R.D. 131, 136 (S.D.N.Y. 2019) ("While it is true that Signet in-house counsel were copied on the emails . . . that does not make them privileged."). Google is concerned that many of these documents were withheld because they included a lawyer but that the communication which has been withheld was not for the purpose of obtaining legal advice.

In light of the significant percentage of documents produced from the *in camera* review and as a result of the meet-and-confer process (which is already 213 additional documents), Google respectfully requests that the Court undertake a further *in camera* review of the documents in these two categories.

While Google would ideally seek to have all of the documents reviewed *in camera*, Google also appreciates that such a review might place too much of a burden on the Court, and therefore, Google respectfully requests that the Court set forth a process for the submission of additional exemplars in sufficient number to reflect the number of documents that have been withheld in each of these categories.

B. SM Kids' Position

Google proposes that the Court conduct additional in camera review, despite that the Court has already issued a reasoned decision and reviewed a significant number of documents in camera. SM Kids objects to that request as unreasonable and unnecessary in light of the Court's Order, the Court's prior in camera review, and the ongoing meet and confer process. Google should respect the Court's time. This case can and should move forward in light of the privilege disputes already extensively litigated before the Court. In any event, the privilege challenges remaining lack merit and can be resolved by proper application of the Court's Order without extensive additional briefing.

On the other hand, if the Court is inclined to hear argument or rule on the issues set forth in Google's section of this joint letter and if the Court does not grant a stay of privileged-related litigation in this action, SM Kids respectfully requests 8 days to brief those issues in a reply letter. This joint-letter procedure has prejudiced SM Kids' ability to respond to Google's ten-page argument before the filing deadline.

Respectfully submitted,

By: _/s/ *Ian Shapiro*_________
Ian Shapiro
*Attorney for Defendants*

By: _/s/ *John Magliery*______
John Magliery
*Attorney for Plaintiff*

246132122

ENDORSEMENT: Given Defendants' stated intention to file objections to my Opinion and Order, dated February 23, 2021, pursuant to Fed. R. Civ. P. 72(a), any further resolution of privilege issues by me, and any further privilege-related document production and privilege-related discussions between the parties, shall await Judge Schofield's ruling on the objections. In addition, Defendants' Letter Motion filed at ECF Nos. 202/203 is DENIED WITHOUT PREJUDICE. No later than five (5) days after Judge Schofield's ruling on the objections, the parties shall meet and confer in a good faith effort to resolve any remaining privilege disputes. If they are unable to resolve such disputes, within seven (7) days after the initial meet and confer session, Defendants shall file a Letter Motion with the Court raising any remaining privilege issues. The Court shall set a briefing schedule for such Letter Motion after it is filed. SO ORDERED.
Dated: 3/9/2021